## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | |
| | : | CRIMINAL NO. 07-CR-190 |
| JERMAINE GRIFFIN | : | (JDB) |

### MOTION TO SUPPRESS EVIDENCE AND STATEMENTS
### POINTS AND AUTHORITIES IN SUPPORT THEREOF

COMES NOW the Defendant herein, JERMAINE GRIFFIN, by and through his

undersigned counsel, Frances M. D'Antuono, Esq., and, pursuant to Fed. R. Crim. P.

12(b)(3)(C), and the Fourth and Fifth Amendments to the United States Constitution, hereby

respectfully moves this Honorable Court for an Order prohibiting the Government from using at

trial any and all physical evidence seized without a warrant from on or about the Defendant's

person or from the vehicle which his wife's vehicle, which he was driving, at the time of his

arrest. . In support of this Motion, the Defendant states as follows:

### I.  Factual Background

1.  Mr. Griffin was arrested on or about July 10, 2007, after the vehicle he was driving

was stopped for an allegedly illegal tint at about 11:56 a.m. in the 1300 block of Perry Place,

N.W. in Washington, D.C.

2.   A police officer alleges that he received "information" from a "confidential reliable

source" pertaining to a vehicle "containing a large quantity of crack cocaine."  The source

allegedly provided a description of the vehicle.  MPD Form 163 narrative.

3.   The officer claims that he spotted the vehicle, which had an allegedly illegal tint on its windows.  He then conducted a traffic stop in front of 1352 Perry Place, N.W., supposedly noticing that the driver (the Defendant Mr. Griffin) was exhibiting signs of nervousness ("his hands were shaking, his heart rate was elevated, and he had a pulsating carotid artery on the left side of his neck", MPD 163).

4.   The officer also claims to have observed a crumb of an off-write substance on the center console of the vehicle, allegedly while the defendant leaning to the glove box to produce his license, registration and insurance information, as requested by the officer.

5.   The officer directed Mr. Griffin to exit the vehicle, and allegedly then conducted a search of the vehicle.  The officer removed the cup holder in front of the center console and observed a large off white chunk wrapped in a clear plastic bag.  Next to that was another black plastic bag with multiple off white chunks.   A search of the passenger compartment allegedly revealed a "seven up" can between the passenger seat and the center console, which appeared to have been altered.  The can had a hollowed out portion "consistent with narcotics packaging." MPD 163.  The can contained 15 off white rocks individually wrapped in plastic bags, knotted at the top.

6.   The suspected narcotics field tested positive for cocaine base.  In addition, during the search of the vehicle, $980 was allegedly removed from the center console.  Mr. Griffin allegedly had $414 in his right rear pants pocket.

7.   The police officer has alleged that, upon finding the suspected narcotics and viewing the registration, he asked Mr. Griffin, without benefit of <u>Miranda</u> warnings, if he drove the car frequently, and Mr. Griffin answered, "Yes."

2

## **Legal Argument**

8.   It is clear that the actions of the police in detaining and searching Mr. Griffin constituted a seizure of his person. See United States v. Mendenhall, 446 U.S. 544, 544 (1980) (plurality opinion) ("[A] person has been 'seized' within the meaning of the Fourth Amendment if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.") (footnote omitted).   There is no sense in which, having been forcibly detained as Mr. Griffin was, a reasonable person would have felt free to leave. [1]

9.   Further, because Mr. Griffin's seizure was effectuated without a warrant, the Government bears the burden of proving that it was legal.  Hayes v. Florida, 470 U.S. 811 (1985); Florida v. Royer, 460 U.S. 491, 500 (1983);  United States v. Allen, 629 F.2d 51, 55 (D.C. Cir. 1980).  Indeed warrantless searches and seizures, where challenged, mandate strict judicial scrutiny.  United States v. Watson, 423 U.S. 411, 432 n. 6 (1976) (Powell, J., concurring); Henry v. United States, 361 U.S. 98, 101 (1959); Terry v. Ohio, 392 U.S. 1 (1968).

---

[1]  The Mendenhall court enumerated examples of conduct comprising a seizure, which embrace the police conduct in the instant case:

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

Mendenhall, 446 U.S. at 554.  In the instant case, Mr. Griffin was not free to leave, nor would any reasonable person have felt so under the circumstances, from the moment he was stopped by the police officer.  Moreover, back-up arrived shortly thereafter, as well, conduct well within the Mendenhall definition of a seizure of the person.

There must exist sufficient objective justification for any detention, whether in the form of an official "arrest" or even a momentary seizure. Florida v. Royer, 460 U.S. at 498 (a suspect "may not be detained even momentarily without reasonable, objective grounds for doing so.") Thus, the Government bears the burden of demonstrating that the requisite level of cause existed for the warrantless detention and search of Mr. Griffin and the vehicle. [2]

10. The police put forth two grounds for the stop, detention and search. First, the officer claims that Mr. Griffin had an illegal tint on the front windows of the vehicle. If so, that would not provide probable cause to search Mr. Griffin or the vehicle, but merely grounds to issue a notice of infraction and direct Mr. Griffin (or the vehicle's owner) to correct the tint. See DC Code, 50-2207.02 ("Tinted Windows Prohibited"), Sections (a)(1)(A), ( c), and (d). As a non-arrestable offense, this may have provided grounds to ask Mr. Griffin out of the vehicle, see Pennsylvania v. Mimms, 434 U.S. 106 (1977)(upon a traffic stop, officer may ask defendant out of car for reasons of officer safety), but not to search the vehicle.

11. Mere nervousness, even if truly evident -- and the defendant disputes this — would not add sufficient facts to make out grounds to search the vehicle. See e.g. U.S. v. Spinner, 475 F.3d 356 (D.C. Cir. 2007)( no reasonable suspicion that defendant was armed and dangerous, so as to justify Terry frisk of vehicle, where police stopped defendant for a parking violation and

---

[2] Clearly, the fact that drugs were eventually discovered in concealed areas of the vehicle cannot be used to bootstrap the facts available to support the requisite legal cause to detain Mr Griffin in the first place in this case. See Bailey v. United States, 128 U.S. App. D.C. 354, 357, 389 F.2d 305, 308 (1967) (quoting United States v. Di Re, 332 U.S. 581, 595 (1948) ("[A] search [or seizure] is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success."). The police would not be permitted to "bootstrap" probable cause by means of any contraband they might find in the defendant's constructive possession as the result of a search lacking in probable cause.

defendant exhibited progressive signs of nervousness and furtive gestures).   Here, as in Spinner, there is nothing about this defendant's behavior, upon a "tint" stop, justifying a search or "protective frisk" of the passenger compartment of the vehicle, because there was nothing about Mr. Griffin that would provide the officer with reason to believe "based upon 'specific and articulable facts . . . taken together with rational inferences from those facts,' that '[the officer] [was] dealing with an armed and dangerous individual.'"    United States v. Spinner, 475 F.3d at _ _, citing United States v. Holmes, 385 F.3d 786, 789 (D.C. Cir. 2004).

12.   As in Spinner, "some additional fact" not present in the case would be needed "to get from the defendant's conduct (or his nervousness) to his likely being dangerous." Spinner at _ __.  See and compare United States v. Holmes, supra, 385 F.3d at 787-88 (officers had twice observed the defendant put his hand under his car seat, he admitted being drunk, and, once out of the car, Holmes reached for his pocket repeatedly, despite being told not to do so, such that a reasonably prudent officer could have found that he armed himself when exiting the vehicle). Given the lack of Terry grounds to frisk the automobile in the instant case (or the driver, for that matter), the search of the vehicle was without legal justification under Terry, and its fruits should be suppressed.

13.   The second claim made by the officer is that he had information from an allegedly reliable source justifying either probable cause to search or a reasonable suspicion that criminal activity was afoot, so as to warrant further investigation.  However, at this stage, there has been no information put forward by the Government which would allow this court to assess the basis for the claim that (1) the "source" was truthful (veracity analysis), (2) that the source ws reliable and (3) the basis of knowledge for the source's claims – that is, that would allow the Court at this

stage to evaluate the source's claim that the vehicle driven by Mr. Griffin contained a large amount of narcotics.  See e.g. Illinois v. Gates, 462 U.S. 213, 227 (1983) ("standing alone, the letter provided [by the informant] would not provide the basis for a magistrate's determination that there was [probable cause to believe that contraband would be found" in the defendants' home or car, because the letter provides "virtually nothing from which one might conclude that its author is either honest or his information reliable").  Whether there is such information and the credibility of both the source and the officer reporting such information are matters of fact which must be determined at an evidentiary hearing, which the Defendant duly requests.

14.   Under Illinois v. Gates, 462 U.S. at 230, an informant's 'veracity," 'reliability,' and 'basis of knowledge' are highly relevant in determining the value of his report." Id. at 230.  In the instant case, the Government has put forward no evidence on any one of three relevant Gates criteria sufficient to sustain the stop which and search occurred her, which would ultimately require probable cause.  There is a complete absence of evidence on the first two prongs  – the informant's veracity or reliability - except for conclusory statements, which do not survive Gates analysis.

15.   On the facts provided to date, the seizure and subsequent search of Mr. Griffin and the vehicle were thus illegal, because there was never probable cause nor Terry grounds to detain him, search him and/or search his vehicle.

16.   Since the tangible evidence and the alleged statement in this case (that he drove the vehicle frequently) were obtained as a result of Mr. Griffin's illegal seizure and the ensuing illegal search of his person and the vehicle, any evidence or statements obtained from this search comprise the tainted fruit of that illegal Fourth Amendment detention and search and therefore

6

must be suppressed. <u>Wong Sun v. United States</u>**,** 371 U.S. 471 (1963); <u>Taylor v. Alabama</u>, 457

U.S. 687 (1982); <u>Dunaway v. New York</u>, 442 U.S. 200, 220 (1979)

    17.   Finally, the interrogation of the defendant, at a time when the police claim to have

had clear probable cause to arrest for possession with intent to distribute cocaine, as to whether

he drove the vehicle frequently, and his answer,"Yes," comprises illegal interrogation under the

Fifth Amendment as well, and the statement must be suppressed as the fruits of illegal

interrogation for police failure to give <u>Miranda</u> warnings prior to asking Mr. Griffin any

questions, the answers to which might incriminate him.  See <u>Yarborough v. United States</u>, 541

U.S. 652, ___   (2004)(standard for *Fifth Amendment* purposes is  "objective; " as is the Fourth

Amendment standard under <u>Mendenhall</u> - whether a reasonable person under all the

circumstances presented would feel free to leave; to wit,  "Our more recent cases instruct that

custody must be determined based on how a reasonable person in the suspect's situation would

preceive his circumstances"). (emphasis supplied).


    WHEREFORE, the foregoing premises considered, and on the basis of such other

evidence as may be adduced at a pretrial hearing hereon, which the Defendant duly requests, the

Defendant respectfully requests that the Court grant in full all the relief requested and exclude

from trial of this case any drugs, money or other tangible items seized from Mr. Griffin and/or

from the vehicle.   He also moves the Court to suppress as the product of illegal search and

seizure and interrogation any statements allegedly taken from him on the scene.  The Defendant

respectfully requests an evidentiary hearing on this Motion.

Respectfully submitted,

_____

BY:    Frances M. D'Antuono
        Unified Bar No. 358141

        218 Seventh Street, S.E.
        Washington, D.C. 20003
        (202) 544-6332
        fdantuono@msn.com
        Counsel for Jermaine Griffin

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Motion was timely served, by email, upon Edward O'Connell, Esquire, 555 4th Street, N.W., Washington, D.C. 20530, the assistant United States Attorney assigned to this case, and upon the chambers of the Honorable John D. Bates, Presiding Judge in the case, this 1st day of October, 2007.

_____
      Frances M. D'Antuono

.