# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No.   07-190 (JDB)** |
| **v.** | : | |
| | : | |
| **JERMAINE L. GRIFFIN** | : | |
| | : | **Motions Hearing Date: October 29, 2007** |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its response in opposition to the defendant's Motion To Suppress Evidence and Statements and Points and Authorities.  For the reasons set forth herein, the government respectfully moves this Court to deny the defendant's motion to suppress evidence and statements.  In support of its opposition, the government relies upon the foregoing facts and authorities, as well as any others that may be cited at a hearing upon this motion, and states the following:

I. Factual Background

On July 10, 2007, at approximately 11:56 a.m., Officer Sean D'Augustine of the United States Park Police was on patrol in the Columbia Heights neighborhood of Northwest Washington, DC, when he received a call from a reliable confidential source.  The source informed Officer D'Augustine that an individual who was in a silver colored Chevrolet Tahoe with District of Columbia license tag BX-8821, was in possession of cocaine that was concealed

in a 7-Up soda can.  The source also told Officer D'Augostine that the Tahoe was then in the area

of the intersection of 14th Street and Perry Place NW.  When Officer D'Augostine received this

information, he was close enough that he could see that vehicle.  Moreover, Officer D'Augostine

noticed that the Tahoe had excessively tinted windows.  Within seconds of receiving the

information from the source, Officer D'Augostine came upon the Tahoe, activated his emergency

equipment and initiated a traffic stop on that vehicle in the 1300 block of Perry Place NW.

        As Officer D'Augostine approached the driver's side of the Tahoe and made contact with

the defendant, the driver and sole occupant of the Tahoe, Officer D'Augostine noticed that the

defendant displayed signs of nervousness, including shaking hands and an elevated heart rate that

was evident from his visibly pulsating carotid artery.  Office D'Augostine asked the defendant

for his license and registration.  As the defendant reached into the Tahoe's glove compartment,

Officer D'Augostine observed on top of the Tahoe's center console, small rocks of what Officer

D'Augostine immediately recognized to be crack cocaine.

        After the defendant produced his driver's license and registration,[1] Officer D'Augostine

had the defendant exit the Tahoe.  Officer D'Augostine, and other officers then searched the

Tahoe.  Beneath the cup holder of the center console, officers discovered a large chunk of what

appeared to be crack cocaine wrapped in a clear plastic bag.  Next to that bag, officers discovered

another, black plastic bag, containing multiple large chunks of what appeared to be crack

---

[1]        In his motion, the defendant asserts that "upon finding the suspected narcotics and
viewing the registration, [Officer D'Augostine] aked [the defendant], without benefit of <u>Miranda</u>
warnings, if he drove the car frequently, and [defendant] answered, 'Yes.'"  Defendant's
Motion, p. 2 ¶ 7.  Government counsel has not yet received the transcript of the preliminary and
detention hearing of this case, and does not recall Officer D'Augostine testifying about this
statement.  Nevertheless, as is argued <u>infra</u>, such a statement would be admissible.

cocaine.  Also discovered between the center console and the front passenger seat was a 7-Up soda can.  The can's lid had been altered so that it could be removed.  Inside of the can officers discovered 15 rocks of crack cocaine individually wrapped in plastic.  From the size and packaging of these 15 rocks, the officers recognized them to be typical of saleable amounts of crack cocaine known as "eight-balls."

Also found in the Tahoe was $980.00 in cash recovered from the center console, and several documents, including a District of Columbia Department of Motor Vehicles registration certificate for the Tahoe, two Geico Insurance policy identification cards, one listing the defendant as a driver of the Tahoe, a receipt from the Jiffy Lube in Forestville, Maryland, listing the defendant as the customer who had service done on the Tahoe on July 9, 2007, and two receipts in the defendant's name from Flair Cleaners in Capitol Heights, Maryland, dated July 3, 2007.

The defendant was placed under arrest and taken into custody.  A search of the defendant's person incident to his arrest recovered an additional $414.00 in currency found in the defendant's right rear pants pocket.

A test of the window tint of the Tahoe's driver's side window  revealed only 16% light transmittance.  The defendant was issued a notice of infraction for this violation.  All of the suspected narcotics were field tested and gave positive reactions for cocaine.  In total, the crack cocaine weighed 416.5 grams, with an approximate street value of $40,000.00.

On August 7, 2007, the Grand Jury handed up a one count indictment charging the defendant with Unlawful Possession With Intent to Distribute 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii).

II. <u>Argument</u>

The defendant moves to suppress the tangible evidence and the statement, claiming that they were obtained pursuant to an illegal search. This claim is without merit and should be denied. Officer D'Augostine's stop and subsequent arrest of the defendant were permissible for either of two reasons. First, the information that Officer D'Augostine received from a proven reliable confidential source, immediately corroborated by Officer D'Augostine's observations, gave rise to probable cause justifying the officer's stop and arrest of the defendant. Independently, Officer D'Augostine's observation of the excessively tinted windows of the vehicle being driven by the defendant justified the officer's stop of the defendant's vehicle for a traffic infraction. During the course of that traffic stop, Officer D'Augostine's observation of crack cocaine in plain view gave rise to probable cause justifying the defendant's arrest. In light of this probable cause, the search of the defendant's vehicle and the recovery of the drugs, money and documentary evidence were permissible.

The defendant's statement regarding his frequent use of the Tahoe is likewise admissible. Regardless of when Officer D'Augostine's observations amounted to probable cause to arrest the defendant, the defendant's response was not the result of custodial interrogation. Accordingly, the statement was not made in violation of the defendant's <u>Miranda</u> rights, and is admissible.

a.    <u>The source's reliability and the detail of the information, combined with Officer D'Augostine's corroborating observations, gave the officer probable cause to stop and search the defendant's vehicle.</u>

Here, Officer D'Augostine had probable cause to stop and search the defendant's vehicle.

"[P]robable cause to search [exists] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." California v. Acevedo, 500 U.S. 565 (1991). Where the search is based on an informant's tip, the informant's "veracity" or "reliability" and his "basis of knowledge" are elements that "may be usefully to illuminate the common-sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." Illinois v. Gates, 462 U.S. 213, 230 (1982).

As will be demonstrated at a hearing on this motion, ample evidence supports the conclusion that the confidential source in this case was highly reliable. Officer D'Augostine will testify, as he did at the combined preliminary and detention hearing, that over the course of the year preceding the defendant's arrest, the source had provided reliable information to Officer D'Augostine on several occasions. The source has never provided inaccurate information. The source's record of accurately predicting criminal activity is more than sufficient to support the conclusion that the source was highly reliable and that the information provided by the source was therefore credible. See McCray v. Illinois, 386 U.S. 300, 304 (1967); Draper v. United States, 358 U.S. 307, 309, 313 (1959).

The details of the source's information, combined with Officer D'Augostine's corroborating observations, show that the source's information was accurate on this occasion. An adequate basis of knowledge for a tip is shown "if the tip contains sufficient factual detail to give rise to the inference that the informant came about the information in a reliable manner." United States v. Myers, 538 F.2d 424, 426 (D.C. Cir. 1976), cert. denied, 430 U.S. 908 (1977); accord Spinelli v. United States, 393 U.S. 410, 417 (1969) (tip that defendant wearing certain

clothes would be arriving by train with three ounces of heroin on one of two specified mornings contained sufficient detail such that magistrate "could reasonably infer that the informant had gained his information in a reliable way") (citing Draper, supra) (footnote omitted).

Moreover, "less detailed information from a reliable source may be used as grounds for a finding of probable cause if independent investigation by law enforcement agencies yields sufficient verification or corroboration of the informant's report." Myers, 538 F.2d at 426 (internal quotation marks and citation omitted). The Supreme Court has "consistently recognized the value of corroboration of details of an informant's tip by independent police work," Gates, 462 U.S. at 241, both because such corroboration makes it "apparent that the informant ha[s] not . . . fabricat[ed] his report out of whole cloth," Spinelli, 393 U.S. at 417, and "because an informant [who] is right about some things . . . is more probably right about other facts, including the claim regarding the [defendant's] illegal activity[.]" Gates, 462 U.S. at 244 (internal quotation marks and citation omitted).

Here, immediately upon receiving the information from the source, Officer D'Augostine was able to verify the details of the make, model and color of the vehicle, its exact license tag and its location. In light of the source's productive history of providing accurate information about criminal activity, these detailed and accurate predictions were sufficient to warrant a person of ordinary caution in believing that the informant's prediction -- that the driver of the Tahoe had a 7-Up can with cocaine in it -- would also be accurate. The officer's stop and subsequent search of the defendant's vehicle was wholly appropriate. The evidence recovered from that search is accordingly admissible at trial. The defendant's motion to suppress the tangible evidence should be denied.

b.    Officer D'Augostine's stop of the defendant's vehicle was permissible as a traffic stop for excessive tint, and the crack cocaine visible in plain view gave the officer probable cause to arrest the defendant and to search the vehicle.

The officer in this case had reason to stop the car and approach its occupant after he noticed that the Tahoe had excessively tinted windows. See Whren v. United States, 517 U.S. 806 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred"). When Officer D'Augostine then saw the rocks of crack cocaine on the center console of the Tahoe, the officer developed probable cause to seize that cocaine without a warrant. See id., 517 U.S. at 808-09 (Since the police had probable cause to stop the car in which the defendant was a passenger for traffic violations, two large plastic bags of what appeared to be crack cocaine that the police saw in the defendant's hands upon approaching the car were admissible); Horton v. California, 496 U.S. 128, 136-37 (1990) (Warrantless seizure of incriminating evidence is valid if the officer did not violate the Fourth Amendment in arriving at the place from which the evidence was plainly viewed, the incriminating character of the evidence was immediately apparent, and the officer has a lawful right of access to the object itself).

All of the other items of evidence were recovered within the scope of lawful searches conducted incident to the defendant's arrest. See New York v. Belton, 453 U.S. 454, 460-61 (1981) (Officer who has made a lawful custodial arrest of the occupant of a car may search incident to that arrest the passenger compartment of the car and any containers found therein); Chimel v. California, 395 U.S. 752, 762-63 (1969) (Warrantless search incident to a lawful arrest may extend to arrestee's person and the area within arrestee's immediate control). Accordingly,

for this reason as well, the defendant's motion to suppress tangible evidence should be denied.

c.    The defendant's statement is admissible as it was not the result of custodial interrogation.

The defendant's argument that his admission regarding his frequent use of the Tahoe was impermissibly obtained in violation of his Miranda rights is also without merit. Despite the fact that Officer D'Augustine had probable cause to arrest the defendant, the statement was made prior to that arrest. As the defendant made the statement while not subjected to custodial interrogation, the statement was not made in violation of the defendant's Miranda rights.

The warnings required by Miranda v. Arizona, 384 U.S. 436 (1966), are necessary only before "express questioning or its functional equivalent" designed to "elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 300 (1980). Accord Berkemer v. McCarty, 468 U.S. 420, 434 (1984); Miranda, 384 U.S. at 477-78; United States v. Samuels, 938 F.2d 210, 214 (D.C. Cir. 1991).

Moreover, the warnings set out in Miranda apply only when a suspect is in custody. In determining whether a suspect is in custody, "the inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." Stansbury v. California, 511 U.S. 318, 321 (1994) (per curiam). The defendant bears the burden of proving that he was in custody when questioned. United States v. Charles, 738 F.2d 686, 692 (5th Cir. 1984). Here, the defendant cannot meet this burden. Officer D'Augustine asked the defendant if he frequently drove the Tahoe while the defendant was retrieving his identifying information. The answer was given prior to the officer giving any indication to the defendant that he was under arrest. Indeed, when the answer was given, the defendant was neither under

formal arrest nor was the restraint on the defendant's freedom of movement of the degree

anywhere approaching that which is associated with formal arrest.  Accordingly, the defendant's

motion to suppress his statements should be denied.


WHEREFORE, the government respectfully moves the Court to deny the defendant's

motion to suppress evidence and statements.

Respectfully submitted,


JEFFREY A. TAYLOR
United States Attorney
D.C. Bar Number 498610


BY: _____/S/_____

EDWARD A. O'CONNELL
Assistant United States Attorney
D.C. Bar Number 460233
Organized Crime and Narcotics Trafficking Section
555 Fourth Street NW
Room 4122
Washington, DC 20530
(202) 514-6997
Fax: (202) 514-8707
Edward.O'Connell@usdoj.gov